**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER EVERETT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 4697 |
| | ) | |
| v. | ) | Honorable Edmond E. Chang |
| | ) | Judge Presiding |
| SALVADOR GODINEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME the defendants SALVADOR GODINEZ and TARRY WILLIAMS, by and

through their attorney LISA MADIGAN, Attorney General of the State of Illinois, and for their

Answer to Plaintiff's First Amended Complaint state the following:

**NATURE OF THE ACTION**

1.      Plaintiff, an inmate at Stateville, has spent more than five years suffering from
preventable injuries that have been complicated by Defendants' policies, customs and practices,
including repeated failures to provide Plaintiff necessary medical treatment and medically
ordered accommodations.  His suffering continues to this day.

**ANSWER:**    **Denied.**

2.      This lawsuit, brought pursuant to 42 U.S.C. § 1983, the Americans with
Disabilities Act ("ADA") and the Rehabilitation Act of 1973, challenges the official polices and
widespread customs and practices of IDOC, Stateville and Wexford that caused Plaintiff harm
between April 2013 and January 2014.

**ANSWER:**    **Defendants admit that Plaintiff purports to bring this matter pursuant to 42
U.S.C. § 1983, the Americans with Disabilities Act and the Rehabilitation Act of 1973, and
purports to challenge alleged polices and widespread customs and practices of IDOC,
Stateville and Wexford.  Defendants deny that Plaintiff was harmed by IDOC policies,
customs, or practices, or that he is entitled to any relief sought herein.**

## THE PARTIES

### Plaintiff

3.     Plaintiff is an inmate with IDOC and has been incarcerated in Stateville since 2003.

**ANSWER:     Admitted.**

### Defendants

4.     Defendant Godinez has been the Director of 1DOC since 2011.  Upon information and belief, Godinez is responsible for establishing 1DOC policies, customs and practices as discussed herein.  In all of his actions, Godinez was acting under color of state law and in the course of his employment.  The claims being made against Godinez are brought against him in his official capacity.

**ANSWER:     Defendants admit the first and third sentences of Paragraph 4.  Answering further, Defendants admit that Director Godinez is responsible for establishing certain IDOC policies, customs and practices, but deny the remaining allegations set forth in the second sentence.  Defendant admits that Plaintiff purports to sue Director Godinez in his official capacity, but deny that Plaintiff is entitled to any relief sought herein.**

5.     Defendant Williams is employed by 1DOC as Warden of Stateville.  Upon information and belief, Williams is responsible for establishing Stateville policies, customs and practices as discussed herein.  In all of his actions, Williams was acting under color of state law and in the course of his employment.  The claims being made against Williams are brought against him in his official capacity.

**ANSWER:     Defendants admit the first and third sentences of Paragraph 4.  Answering further, Defendants admit that Warden Williams is responsible for establishing certain Stateville policies, customs and practices, but deny the remaining allegations set forth in the second sentence.  Defendant admits that Plaintiff purports to sue Warden Williams in his official capacity, but deny that Plaintiff is entitled to any relief sought herein.**

6.     Defendant Wexford is a Florida corporation with its principal place of business at 501 Holiday Drive, Foster Plaza Four, Pittsburgh, Pennsylvania 15220.  IDOC contracts with Wexford to provide medical services in Stateville.  Upon information and belief, Wexford is responsible -- alone or together with Godinez, Williams or both -- for establishing medical care policies, customs and practices in Stateville.

**ANSWER:     Defendants admit the second sentence of Paragraph 6.  Answering further, Defendants admit that Wexford, Godienz, and Williams are responsible for**

**establishing some policies, customs and practices at Stateville. Defendants lack knowledge to form a belief as to the truth of the remaining allegations set forth in Paragraph 6.**

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it is a civil action arising under the ADA, the Rehabilitation Act and the Eighth Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment.

**ANSWER:     Admitted.**

8.     This Court is authorized to render declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:     Admitted.**

9.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because all of the events and policies at issue took place or were applied at Stateville, located in Will County, Illinois, which is located within the Northern District of Illinois.

**ANSWER:     Admitted.**

## FACTUAL ALLEGATIONS

**A.     After Two Serious Injuries In April Of 2013, Plaintiff's Medical Needs Are Ignored[1]**

10.     In April 2013, Plaintiff fell to the ground while trying to climb down from his top bunk and seriously injured his left knee. He was unable to fully bend or extend his left leg, and it felt as if a ligament connected to his knee popped each time he tried. He, in turn, experienced constant throbbing pain.

**ANSWER:     Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

---

[1]     To the extent Plaintiff's headings are considered allegations, they are denied.

11.     On April 16, 2013, Plaintiff received crutches in connection with his knee injury. He also received a low gallery/low bunk permit but, despite repeated requests later that day, was given neither.  He filed a grievance relating to this failure to comply with his medically-ordered accommodation the following day.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

12.     Nearly two weeks later, on April 28, 2013 -- while still assigned the top bunk in the highest gallery of his cell house -- Plaintiff strained his back while arranging his belongings and cleaning his cell.  Plaintiff was compensating for his injured left knee, and after bending over to move his belongings, Plaintiff found that his back was in severe pain and he was unable to sit or stand upright.  He felt tremendous pressure in his lower back, which eventually extended up through the top of his back and down to the bottom of his spine.  The pain in Plaintiff's back was extreme and constant.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

13.     Plaintiff immediately laid down on the floor, in front of the door to his cell and asked a correctional officer for help.  That correctional officer said that he had contacted the healthcare unit but could not do anything else for Plaintiff.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

14.     After waiting for an hour and fifteen minutes, while still lying on the floor of his cell and having not received any medical attention, Plaintiff again asked the same correctional officer for help.  That correctional officer repeated that he had contacted the healthcare unit and could not do anything else for Plaintiff.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

15.     Approximately thirty minutes later, or an hour and forty-five minutes after Plaintiff injured his back, a correctional officer announced that Christian inmates could leave their cells to attend church services.  Plaintiff took this opportunity to check out of his cell and attempt to seek help elsewhere.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

16.    Plaintiff, still in severe pain and unable to fully stand or use his left leg, slowly descended from the fifth floor to the ground floor of his cell house.  He again requested help, this time in the form of a wheelchair and assistance getting to the healthcare unit, and sat in the "bull pen" area of his cell house for an hour to an hour and a half waiting for the requested help.

**ANSWER:**    **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

17.    Eventually, a correctional officer obtained a wheelchair for Plaintiff and wheeled him to the outside of the healthcare unit.

**ANSWER:**    **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

18.    Instead of receiving medical help when he finally arrived at the healthcare unit more than three hours after being injured, Plaintiff was denied entry to the healthcare unit.  He was informed by Shanal Barnett, a medical technician on duty, that he would not be seen by a medical professional that day because he was on a list to be seen in the healthcare unit approximately two days later.

**ANSWER:**    **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

19.    Plaintiff, desperate for some relief and assistance, explained that he was in severe pain, could not sit or stand upright, and could not walk, and Plaintiff begged Barnett to help him. Barnett, however, refused to evaluate Plaintiff or allow him to see a medical professional.

**ANSWER:**    **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

20.    Unable to receive medical attention and unable to stand up and return to his cell, Plaintiff was returned to the "bull pen" area in his cell house where he sat for hours in the hopes of being seen by a medical technician assigned to that cell house.

**ANSWER:**    **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

21.    Karen Fryerson, the medical technician assigned to Plaintiff's cell house, finally visited Plaintiff sometime after dark.  She offered Plaintiff Tylenol but otherwise confirmed that she would not or could not help him because he was scheduled to be seen in the healthcare unit approximately two days later.

**ANSWER:**    **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

22.    Upon information and belief, Barnett and Fryerson were acting pursuant to IDOC, Stateville and/or Wexford official policy and widespread custom and practice in refusing to diagnose or treat Plaintiff because he was scheduled to be seen in the healthcare unit at a later time.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

23.    Unable to secure any medical attention and having sat in the "bull pen" in his cell house for approximately ten to twelve hours after being denied treatment in the healthcare unit, Plaintiff asked Richanda Carr and Richard Samuelson, both correctional officers, for an emergency low gallery/low bunk assignment based on his inability to stand, let alone climb five flights of stairs to his cell and climb into his top bunk, for which, as discussed in more detail below, Plaintiff was not given a ladder.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

24.    Carr and Samuelson, who upon information and belief had authority to grant Plaintiff an emergency cell reassignment, refused Plaintiff's request. They also refused to assist Plaintiff in receiving any medical attention.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

25.    Instead, Samuelson ordered Plaintiff to return to his cell or be sent to segregation.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

26.    In an effort to avoid being punished, Plaintiff spent at least thirty minutes crawling from the ground floor to his cell on the fifth floor. Plaintiff alternately crawled backwards up flights of stairs, lifting himself onto a higher stair with his arms and dragging his legs along with him, and hobbled up flights of stairs while hunched over and using only his right leg. The pain was agonizing. Plaintiff lost sensation in his hands and fingers and became unable to move his head. Not a <u>single</u> officer or employee of IDOC or Stateville assisted Plaintiff in returning to his cell or seeking medical attention.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

27.    When Plaintiff finally arrived in his cell, he was exhausted.  He could not stand or even sit upright, much less climb into his top bunk, and was forced to lay and eventually sleep on the floor of his cell.  Plaintiff remained on the floor of his cell for the remainder of April 28, 2013 and all of the following day.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

28.    After spending two days in severe pain, Plaintiff was finally seen in the healthcare unit.  Due to the severity of his injuries, Plaintiff received pain medication, a two-week lay-in permit and a low gallery/low bunk referral.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

29.    Had IDOC honored Plaintiff's April 16, 2013 low gallery/low bunk permit, Plaintiff would not have had to climb up and down five flights of stairs in an unsuccessful attempt to seek medical help.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

**B.    Plaintiff's Experience In 2013 Was Not Unique, As Stateville And Wexford Have A History Of Failing To Provide Inmates With Immediate And Necessary Medical Attention**

30.    Upon information and belief, Stateville and Wexford frequently deny immediate medical attention to inmates, and inmates often wait days or months before seeing a doctor.  <u>See</u>, <u>e.g.</u>, 2013 Monitoring Report of John Howard Association of Illinois ("JA Report"), Ex.  A hereto, at 1, 8-9 ("Although Stateville reported 13,352 sick call visits for 2012, some inmates reported that they had not seen healthcare staff because sick call requests were ignored, with reports of no response in more than two months. . . . Inmates reported that physicians are frequently not at the facility and appointments are cancelled.").

**ANSWER:**     **Denied.**

31.    Indeed, several years earlier, in or about June 2009, Plaintiff was similarly denied timely medical attention.  Plaintiff slipped and fell while climbing down from his top bunk, which fall caused a serious injury to Plaintiff's back and sharp pains when he sat and stood.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

32.     Given that Plaintiff was having difficulty standing, walking or even sitting upright, he requested to see a doctor immediately, but his request was denied.  In fact, despite his serious injury, Plaintiff was not seen in Stateville's healthcare unit until two days later.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

33.     And when Plaintiff was finally able to see a medical professional, he was given over-the-counter pain medication, was advised to stay in bed and off his feet for one week and then walk only with the use of crutches for the following two to three weeks and was also given a three-month low gallery/low bunk permit, which was promptly ignored, as discussed in Paragraphs 36-41 below.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

C.     **Starting In 2009, Plaintiff's Medically-Ordered Accommodations Are Repeatedly Ignored**

34.     In addition to not having his medical needs met on a timely basis, Plaintiff's medically-ordered accommodations -- specifically his low gallery/low bunk permits -- were deliberately ignored on multiple occasions.

**ANSWER:**     **Denied.**

35.     The low bunk permit was particularly important, because inmates at Stateville are not provided with ladders or step stools that might assist them in climbing onto a top bunk that is nearly six feet off the ground. Without a ladder or other assistance to climb into their beds, inmates are forced to climb onto the combination sink/toilet, which was more often than not slippery and wet, leap more than three feet to the bunk bed, grab the top bunk and pull themselves onto it.  Climbing down is no less difficult.  Inmates are forced to wriggle to the edge of the bed, stretch their legs as close to the combination sink/toilet as they can, jump as carefully as possible onto the likely slippery and wet combination sink/toilet and then climb to the ground.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

36.     For example, after his injury in 2009 (which was actually caused by falling when attempting to climb, without the assistance of a ladder, from his top bunk), Plaintiff was given a three-month low gallery/low bunk permit, as having to climb stairs and into a top bunk with an injured back was not medically advised.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

37.     Despite having a low gallery/low bunk permit, however, Plaintiff was left in his high gallery cell and in his top bunk for approximately one month.

**ANSWER:     Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

38.     Because Plaintiff's medical needs were ignored for a full month, Plaintiff was forced to continually climb up and down stairs multiple times a day for basic necessities like meals.  He was also frequently forced to sleep on the floor, as the injury to his back often prevented him from being able to haul himself into bed.

**ANSWER:     Defendants deny the allegations set forth in the first sentence of Paragraph 38.  Defendants lack knowledge to form a belief regarding the truth of the remaining allegations set forth in this Paragraph.**

39.     When Plaintiff was finally moved to a low gallery (a cell on the second floor) in or about July 2009, he still was not provided a low bunk, and Plaintiff was forced to continue to sleep on the floor on the days where his back hurt too much for him to climb in and out of his top bunk.

**ANSWER:     Denied.**

40.     In fact, Plaintiff <u>never</u> received the medically-necessary accommodation that was ordered by a doctor during the summer of 2009.  Indeed, upon information and belief, IDOC and Stateville have an official policy and widespread custom and practice of refusing to grant or honor low gallery/low bunk permits. <u>See</u>, <u>e.g.</u>, JA Report at 10 ("Many healthcare complaints JA received related to conditions of an older population, including things like requests for lower bunk permits. IDOC officials noted that while they will grant bottom bunk requests when appropriate, they do not grant bottom gallery requests.").

**ANSWER:     Denied.**

41.     As a result of failing to receive his medically-necessary accommodation, Plaintiff's injury persisted and even worsened.  Plaintiff continued to have back pain and spasms for several years, and he even injured his knee attempting to compensate for the weakness and pain in his back.

**ANSWER:     Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

### D.    Plaintiff's Medically-Ordered Accommodations Are Ignored Twice In 2013

42.    Similarly, after his injury in April 2013, Plaintiff was on crutches and had a low gallery/low bunk permit, but despite his medical orders and use of crutches, Plaintiff was left in a top bunk on the highest gallery of his cell house, requiring him to climb to the fifth floor and attempt to jump from his combination sink/toilet to his top bunk all while on crutches and suffering from severe back pain.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

41.    As a result, Plaintiff was again frequently forced to sleep on the floor of his cell, because his back was too sore for him to do the gymnastics necessary to climb onto the top bunk.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

44.    Moreover, because Plaintiff was often unable to climb the stairs, he was denied equal access to many basic necessities, such as meals (the dining hall is on the ground floor) and showers (the showers are also on the ground floor), and otherwise was denied access to many prison facilities as a practical matter.

**ANSWER:    Denied.**

45.    Despite repeated verbal requests that his low gallery/low bunk permit be honored after he was given both the permit and crutches on April 16, 2013, Plaintiff remained on the highest gallery and in a top bunk.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

46.    Having not received any assistance obtaining his medically-ordered accommodations, Plaintiff filed grievances on April 17, 2013 and April 28, 2013, specifically addressing the failure to place him on a low gallery and in a low bunk consistent with his medical orders.

**ANSWER:    Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

47.     Although Plaintiff indicated that his grievances in April 2013 were emergencies, his April 17, 2013 grievance was not reviewed for emergency status until April 25, 2013 and was not responded to until May 1, 2013, Notably, however, Plaintiff's April 28 grievance, also labeled as an emergency, was not reviewed for emergency status until May 3, 2013 and was never responded to and was, instead, stamped "INMATE ISSUES" on May 23, 2013 and returned to Plaintiff.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

48.     The eventual response to Plaintiff's April 17, 2013 grievance, however, implicitly recognized the severity of Plaintiff's situation, as it indicated that Plaintiff should and would be moved in order to accommodate his medical needs.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

49.     While Plaintiff was finally moved to another cell in May 2013 (likely in response to his grievance), he was not guaranteed a low bunk, as he was told to simply work it out with his new climate.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.  Answering further, inmates at Stateville are not "granted" a specific bunk assignment.**

50.     Plaintiff's new cellmate, however, raised to give up his low bunk and threatened to kill Plaintiff if he was forced to give Plaintiff the low bunk.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

51.     As a result, Plaintiff was forced to continue to sleep on the floor of his cell or risk serious bodily harm from his cellmate for insisting that his climate give up the low bunk.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

52.     Plaintiff felt unable to complain about his situation to security staff, for fear of being injured or killed by other inmates for "snitching" on his cellmate.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

53.     Thus, on May 17, 2013, Plaintiff filed another grievance regarding his placement, noting that despite his low gallery/low bunk permit and a response to a prior grievance indicating

his medical needs should be accommodated, he was placed in a cell in which his climate did not want to give up the low bunk and threatened to harm Plaintiff. Again, however, Plaintiff's grievance, marked as an emergency, was not reviewed for emergency status until May 31, 2013 and was not responded to until August 5, 2013.

**ANSWER:** **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

54. After another month of being denied a low bunk consistent with his medical order, being forced to sleep on the floor and facing threats from his cellmate, Plaintiff was finally moved to a different cell house in June 2013.

**ANSWER:** **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

55. The damage to Plaintiff nevertheless had already been done. As a result of failing to receive his medically-necessary accommodations. Plaintiff's injury persisted. His back injury was unpredictable, often flaring up after Plaintiff was forced to exert himself (including by climbing varying numbers of stairs multiple times per day), and his knee injury routinely flared up when he was forced to climb stairs.

**ANSWER:** **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

56. In another instance in November 2013, Plaintiff had a low bunk permit but was moved to a cell in which another cellmate refused to give up the low bunk.

**ANSWER:** **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

57. Desperate for relief, Plaintiff notified a correctional officer of this situation in confidence, who in turn notified Karen Rabat and Shaun Bass, correctional counselors responsible for assigning inmates to cells and accommodating low gallery/low bunk permits.

**ANSWER:** **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

58. The same correctional officer told Plaintiff that Rabat and Bass knew about Plaintiff's situation but refused to address it. Specifically, Rabat and Bass said that there were no low galleries and low bunks available, despite the fact that Plaintiff knew low galleries and low bunks were available at that time.

**ANSWER:** **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

59.     Receiving no relief from the correctional officers or counselors, Plaintiff filed another grievance on November 24, 2013.  Plaintiff again complained that no low bunk had been secured for him, despite his low gallery/low bunk permit, leaving him to either fight with or "snitch on" his climate in order to secure accommodations consistent with his medical orders.

**ANSWER:      Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

60.     Plaintiff's grievance was responded to on December 6, 2013 with a statement that Plaintiff was not entitled to a low gallery/low bunk.  The response included as an attachment a permit that expired on November 12, 2013 and omitted the fact that Plaintiff had received a renewal of that permit through December 30, 2013.

**ANSWER:      Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

61.     Upon information and belief, each and every instance in which Plaintiff was denied medically-ordered accommodation was consistent with IDOC or Stateville official policy and widespread custom and practice by which both placement staff and security staff pass the buck and refuse responsibility for ensuring that inmates receive medically-ordered low galleries, low bunks or both.

**ANSWER:      Denied.**

62.     Indeed, in a letter dated January 2, 2014, Rabat Stateville's primary placement officer -- wrote to Plaintiff that it was not her responsibility to see that he receive a low bunk and that he should raise any concerns about his inability to secure a low bunk with security staff.  In each instance where Plaintiff spoke to security staff, however, he was told to speak with the placement officer to enforce the low gallery/low bunk permit.

**ANSWER:      Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

**E.      IDOC Refuses To Accommodate Plaintiff's Disability In His Work Assignment**

63.     Adding insult to injury, not only was Plaintiff denied timely medical attention and appropriate medical accommodations, but he was also discriminated against based upon his temporary disability.

**ANSWER:      Denied.**

64.     Prior to his injury in April 2013, Plaintiff performed janitorial duties in the prison barbershop.  Bobby Martinson, an IDOC employee who supervised the barbershop, was Plaintiff's supervisor.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

65.     Plaintiff notified Martinson of his injury shortly after he was injured.  Martinson authorized Plaintiff to take time off to recover and return to work when he was able.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

66.     In July 2013, while still on crutches, Plaintiff reported to his job assignment and successfully performed his duties.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

67.     The following day, Plaintiff reported to work but was turned away by Martinson, who told Plaintiff not to return while on crutches.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

68.     Martinson issued this order despite the fact that Plaintiff performed his job duties while on crutches one day earlier.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

69.     Because having a job was necessary to Plaintiff in order to have some money to spend on basic necessities, Plaintiff gave up his crutches prematurely two weeks later so that he could return to his job assignment.

**ANSWER:**     **Defendants lack knowledge to form a belief regarding the truth of the allegations set forth in this Paragraph.**

14

## CAUSES OF ACTION

### COUNT I

**Violation Of ADA And Rehabilitation Act**
**(Against Defendants Godinez And Williams In Their Official Capacities)**

70.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 69 above.

**ANSWER:     Defendants re-allege and incorporate by repference their answers to Paragraphs 1-69 above.**

71.     The State of Illinois accepts federal funds for its prisons and IDOC and Stateville are therefore subject to the Rehabilitation Act.

**ANSWER:     Admitted.**

72.     Plaintiff, while using crutches or subject to low gallery/low bunk permits, was a qualified individual with a disability within the meaning of the ADA and Rehabilitation Act.

**ANSWER:     Paragraph 72 calls for a legal conclusion.  To the extent further answer is deemed necessary, Paragraph 72 is denied.**

73.     Plaintiff, as an inmate at Stateville, was entitled to a bed and equal access to showers, meals and other facilities and accommodations but was denied these benefits or services because of his disability.

**ANSWER:     Denied.**

74.     Defendants Godinez and Williams, acting in their official capacities, individually or together and under the color of law, perpetuated an official policy and widespread custom and practice whereby IDOC and Stateville employees fail or refuse to adequately comply with low gallery/low bunk permits.

**ANSWER:     Denied.**

75.     As a direct result of this policy, custom and practice, Plaintiff was repeatedly denied equal access to a bed and other prison facilities.

**ANSWER:     Denied.**

76.     Furthermore, while assigned to work in Stateville's barber shop, Plaintiff was entitled to report to work, perform his duties and receive compensation for his work but was denied these benefits or services because of his disability.

**ANSWER:     Denied.**

77.     These denials caused Plaintiff pain and suffering, embarrassment and lost wages.

**ANSWER:     Denied.**

78.     These denials also amount to an independent violation of the Eighth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, insofar as they resulted in failures or refusals to honor Plaintiff's low gallery/low bunk permits.

**ANSWER:     Denied.**

## COUNT II

**Deliberate Indifference To Serious Medical Need in Violation Of 42 U.S.C. g 1983 (Against Defendants Godinez And Williams, in Their Official Capacities, And Wexford)**

79.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 69 above.

**ANSWER:     Defendants re-allege and incorporate by repference their answers to Paragraphs 1-69 above.**

80.     Defendants Godinez and Williams, acting in their official capacities, and/or Wexford, individually or collectively and under the color of law, perpetuated an official policy and widespread custom and practice whereby IDOC and Wexford employees deny inmates medical diagnosis or treatment -- regardless of the severity of the inmates' medical needs -- if the inmates are scheduled to be seen in the healthcare unit at a future date.

**ANSWER:     Denied.**

81.     Defendants Godinez, Williams and Wexford are, and at all relevant times were, aware of facts from which they could infer a substantial and obvious risk of serious harm to inmates as a result of this policy, custom and practice, and they disregarded that substantial and obvious risk by perpetuating the policy, custom and practice.

**ANSWER:     Denied.**

16

82.     As a result of this policy, custom and practice, Plaintiff was denied medical diagnosis or treatment after he was injured on April 28, 2013, despite his obvious and immediate need for medical care, because he was scheduled to be seen in the Stateville healthcare unit several days later.

**ANSWER:     Denied.**

83.     This denial of medical care caused Plaintiff unnecessary, wanton and lusting pain.

**ANSWER:     Denied.**


WHEREFORE, Plaintiff respectfully requests:

A.     A declaration that Defendants Godinez and Williams, in their official capacities, and Defendant Wexford, individually and collectively, have subjected Plaintiff to conditions of confinement, both individual and in aggregate, that deprive Plaintiff of his rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution;

B.     A declaration that Defendants Godinez and Williams, in their official capacities, violated Title 11 of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

C.     Compensatory damages arising from violations of Title li of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by Defendants Godinez and Williams;

D.     Compensatory damages arising from violations of 42 U.S.C. § 1983 and the United States Constitution by Defendant Wexford;

E.     Injunctive relief arising from violations of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983 and the United States Constitution by Defendants Godinez, Williams and Wexford;

F.     Costs, expenses and reasonable attorney fees pursuant to 42 U.S.C. § 1988, 42 § 12205 and Section 794a of the Rehabilitation Act; and

G.     Such other and further legal, equitable and other relief as this Court deems just and proper.

**ANSWER:     Defendants deny that Plaintiffs are entitled to any relief sought herein.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have know.  Defendants therefore protected from suit by the doctrine of qualified immunity.

### Second Affirmative Defense

Defendants' personal involvement has not been established with sufficient specificity to state a claim upon which relief can be granted.

### JURY DEMAND

Defendant Hardy demands a trial by jury on all issues herein triable.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois       By:     s/Lyle Henretty
                                     LYLE HENRETTY
                                     Assistant Attorney General
                                     General Law Bureau
                                     100 W. Randolph St., 13th Fl.
                                     Chicago, Illinois 60601
                                     (312) 814-3327