| | | |
|---|---|---|
| CHRISTOPHER EVERETT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 04697 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| JOHN R. BALDWIN, in his official | ) | |
| capacity as Acting Director of the Illinois | ) | |
| Department of Corrections; and TARRY | ) | |
| WILLIAMS, in his official capacity as | ) | |
| Warden of Stateville Correctional Center, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Everett, an inmate at Stateville Correctional Center, alleges that he suffered a knee injury that went untreated in prison, causing him severe pain and limiting his mobility. He sues Defendants John Baldwin and Tarry Williams in their official capacities under Section 1983, alleging on behalf of himself and a proposed class that the Illinois Department of Corrections and/or Stateville maintains an unconstitutional policy of failing to enforce medical prescriptions directing that inmates be placed in low galleries or low bunk beds due to a medical condition.[1] He also alleges that the Illinois Department of Corrections and/or Stateville routinely denies inmates immediate healthcare whenever an inmate is scheduled for future health appointments, even when the inmate has a severe

---

[1]The Court has subject matter jurisdiction over this case based on 28 U.S.C. § 1331 and 42 U.S.C. § 1983 (Section 1983); 29 U.S.C. § 794a *et seq.* (the Rehabilitation Act); and 42 U.S.C. § 12132 *et seq.* (Title II of the Americans with Disabilities Act).

medical condition that requires treatment before the scheduled appointment. Finally, Everett alleges that Defendants violated the Rehabilitation Act and the Americans with Disabilities Act for denying him access to meals, showers, and a prison job on account of his medical condition. Defendants move to dismiss Everett's Second Amended Complaint for failure to state a claim and also move to strike the class claims. For the reasons explained below, the Court denies Defendants' motion in its entirety.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in Everett's Second Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Everett is incarcerated at Stateville Correctional Center, a facility administered by the Illinois Department of Corrections (IDOC). R. 107, Pl.'s Second Am. Compl. at 1.[2] After injuring his left knee in early April 2013, Everett could not fully bend or extend his left leg and experienced constant throbbing pain. *Id.* ¶ 12. On April 16, a nurse prescribed Everett two weeks of crutches and a low gallery and low bunk. *Id.* ¶ 13. This prescription allowed Everett to be transferred to a lower floor and a low bunk that was close to the ground, but the prescription was not enforced. *Id.* ¶ 14. At the time, Everett was sleeping in a top bunk on the fifth floor, which was the highest gallery. *Id.* ¶¶ 18, 33. On April 23, Everett returned to the healthcare unit and was prescribed a low bunk (but not a low gallery) for a month, but again, prison officials did not move him to a low bunk. *Id.* ¶¶ 16-17.

---

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Everett re-injured his knee a few days later on April 28. *Id.* ¶ 18. When he asked go to the healthcare unit, a medical technician told him that he could not be seen because he had an appointment for April 30, two days later. *Id.* ¶¶ 19-25. A different medical technician gave him Tylenol later in the day but also reiterated that she could not help him because he was already scheduled for the healthcare unit two days later. *Id.* ¶ 28. Various correctional officers also refused Everett's other requests for help throughout the day, including a cell reassignment, wheelchair, and ladder to reach his top bunk (top bunks are roughly six feet off the ground, and inmates are not given ladders or step stools). *Id.* ¶¶ 19-22, 30-31, 45. As a result, Everett alleges that he had to crawl up and down stairs, lift himself with his arms, or hobble using only his right leg. *Id.* ¶ 33. He also spent the next two days in pain on the floor of his cell while waiting for his health appointment on April 30. *Id.* ¶ 35. When he was finally seen, the doctor prescribed pain medication, two weeks of lay-in privileges, and a low gallery and low bunk for ninety days. *Id.* But again, Everett alleges that he did not get a low gallery or a low bunk. *Id.* ¶ 36. Because it was difficult to jump from the top of his sink/toilet to access his bed, he continued sleeping on the cell floor and could not access meals or showers, both of which were on the ground floor. *Id.* ¶¶ 36, 39, 45, 55-57. Everett also alleges that he was not allowed to continue working in his janitorial job at the prison barbershop because of his injury, even though he could perform the work on crutches. *Id.* ¶¶ 79-84.

Everett filed formal grievances on April 17 and April 28, 2013, requesting compliance with his medical prescriptions and permits.[3] *Id.* ¶ 59. Although Stateville responded to the first grievance and stated that Everett would be moved, he was never reassigned. *Id.* ¶¶ 60-62. On May 14, Everett had another appointment at the healthcare unit, where he was prescribed another permit for a low gallery and low bunk, this time for three months. *Id.* ¶ 37. Although he was moved from the fifth to the third floor that afternoon, the new assignment did not comply with his permit because he was still on a higher-level floor. *Id.* ¶¶ 38, 62. And because Stateville does not assign bunks, Everett still had a top bunk because his new roommate refused to give up his low bunk and threatened to kill Everett. *Id.* ¶¶ 62-63. Fearing for his safety, Everett did not complain to prison guards and slept on the floor instead; he later filed another grievance on May 17. *Id.* ¶¶ 64-66. On June 3, Stateville moved Everett from the third to the second floor. *Id.* ¶ 67. It is unclear whether he finally had a bottom bunk, but Everett alleges that he still had to maneuver stairs to access meals and showers on the first floor. *Id.* ¶¶ 67-68. On August 2, Everett was moved to a different cell on the second floor. *Id.* ¶ 69. By this time, Everett only had two weeks remaining from his May 14 permits, and he still had to climb stairs. *Id.*

Everett alleges that he was issued additional low bunk permits on October 29 and November 12. *Id.* ¶¶ 39, 70. Everett was moved another time in November, but once again his new cellmate refused to give up a low bunk. *Id.* After correctional

---

[3]A medical prescription must be officially "converted" to a medical "permit," and only the latter entitles an inmate to the prescribed relief. *Id.* ¶ 14.

officers ignored Everett's continued requests for a low bunk, he filed another grievance on November 24. *Id.* ¶ 73. Stateville responded that Everett was not entitled to a low bunk because his November permit had expired. *Id.* ¶ 74. In total, Everett alleges that he received six low bunk or low gallery permits in 2013—on April 16, April 23, April 30, May 14, October 29, and November 12—all of which were ignored or only partially enforced. *Id.* ¶¶ 13, 16, 35, 39, 62.

Everett believes that his experience of being repeatedly denied a low bunk and low gallery, in contravention of his medical prescriptions and permits, was not unique and has been occurring to others since 2009. *Id.* ¶¶ 44, 75, 77-79. He alleges that IDOC and/or Stateville maintains an unwritten policy or custom of failing to comply with medically-prescribed permits. *Id.* Everett explains that he went through a similar ordeal in 2009, when he injured his back after attempting to climb into his top bunk without a ladder and received a low bunk/low gallery permit. *Id.* ¶ 46. Back in 2009, like in 2013, prison officials also ignored his permits, so Everett had to remain on the top bunk in a higher gallery cell and sleep on the floor after the injury. *Id.* ¶¶ 47-48. As further evidence of the policy of disregarding low bunk/gallery permits, Everett cites a Stateville monitoring report authored by the John Howard Association, which observed that "[m]any healthcare complaints … include[d] things like requests for lower bunk permits. IDOC officials noted that while they will grant bottom bunk requests when appropriate, they do not grant bottom gallery requests." *Id.* ¶ 52; R. 107 at 24, Exh. A, John Howard Association Report at 10. And he also points out several other lawsuits accusing IDOC of failing

to honor low gallery and low bunk permits. Second Am. Compl. ¶ 3 (citing cases); R. 126 at 41, Exh. D, IDOC/Stateville Cases (same).

Everett brings three counts in his Second Amended Complaint. Count One is a claim of deliberate indifference to serious medical needs, brought under 42 U.S.C. § 1983, on behalf of himself and members of a proposed class who received medical permits for low bunks and/or low galleries after June 26, 2011. Second Am. Compl. ¶¶ 92-100. Everett alleges that Baldwin, the Acting Director of the Illinois Department of Corrections, and Williams, Stateville's Warden, acting in their official capacities, perpetuated an unconstitutional policy of refusing to honor medical permits. *Id.* In Count Two, Everett alleges that Defendants violated the ADA and Rehabilitation Act when they failed to accommodate his injured leg and denied him access to meals, showers, and his job. *Id.* ¶¶ 101-110. Finally, in Count Three, Everett alleges that Defendants, in their official capacities, maintained an unconstitutional policy of denying immediate health treatment when an inmate is scheduled to be seen at a future date, no matter how severe and time-urgent the medical problem. *Id.* ¶¶ 111-115. In response, Defendants move to dismiss Everett's Second Amended Complaint under Rule 12(b)(6) and also move to strike the putative class claims under Rule 12(f). R. 120, Defs.' Mot. to Dismiss and Strike.

## II. Legal Standards

### A. Rule 12(b)(6)

Defendants first move to dismiss each of Everett's three Counts for failure to state a claim under Rule 12(b)(6). R. 121, Defs.' Br. at 3-10. Under Federal Rule of

Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation and quotations omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson,* 551 U.S. 89 at 94. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

## B. Rules 12(f) and 23

Defendants also move to strike Everett's putative class claims under Rule 12(f). Defs.' Br. at 10-15. That rule allows "[t]he court [to] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court will also consider Defendants' motion under Rule 23, which provides the authority to review the class allegations at this juncture—before a motion for class certification.

Rule 23(c)(1)(A) provides that the court, "[a]t an early practicable time … must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d)(1)(D) further provides that "[i]n conducting an action under this rule, the court may issue orders that … require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts in this district have held that a motion to strike class allegations, made pursuant to these provisions, "is an appropriate device to determine whether the case will proceed as a class action." *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *1 (N.D. Ill. Dec. 18, 2015) (citing cases). Moreover, in the right circumstances, these motions may properly be filed before plaintiffs move for class certification and before class discovery has been conducted. *See, e.g.*, *id.* ("It is 'practicable' to resolve the class certification question at the pleadings stage only when it is apparent from the complaint that class certification is inappropriate."); *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[G]iven that Rule 23(c)(1)(A)

instructs courts to determine whether a class may be certified '[a]t an early practicable time,' courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained."). On the other hand, when discovery is needed—as it often is—before deciding whether a class should be certified or whether a class definition can be modified, courts may deny the motion to strike. *See Salam v. Lifewatch, Inc.*, 2014 WL 4960947, at *1 (N.D. Ill. Sept. 22, 2014).

The standard for evaluating motions to strike class allegations is the same as the standard for certifying a class under Rule 23. *See Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012). "To certify a class, a district court must find that each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is satisfied as well as one subsection of Rule 23(b)." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). Failure to meet any one of these requirements will preclude class certification. *Id.* (citation omitted).

### III. Analysis

### A. Motion to Dismiss Second Amended Complaint

Defendants first move to dismiss all three Counts of Everett's Second Amended Complaint for failure to state a claim. The claims are: (1) an Eighth Amendment claim for failure to honor medical permits; (2) violations of the Rehabilitation Act (Rehab Act) and Title II of the Americans with Disabilities Act (ADA); and (3) an Eighth Amendment claim for denying inmates immediate medical care. *See* Second Am. Compl.

## 1. Policy of Permit Non-Enforcement

Count One is a claim that Defendants violated the Eighth Amendment (as incorporated through the Fourteenth Amendment) by failing to maintain policies mandating compliance with low bunk and low gallery permits, or, put another way, by maintaining a policy of ignoring these medical permits. Second Am. Compl. ¶¶ 92-100. Everett sues Defendants Baldwin (the Acting Director of the Illinois Department of Corrections) and Williams (the Warden of Stateville) in their official capacities and seeks an injunction requiring future compliance with medical permits. *Id.* In response, Defendants contend that this claim should be dismissed because Everett (1) has not alleged subjective deliberate indifference by Defendants; and (2) has not suffered any constitutionally recognized harm. Defs.' Br. at 4-7. For the reasons described below, none of these arguments have merit.

### i. Pleading Standards for Claims against Governments

To evaluate Defendants' arguments, it is helpful to first outline the governing standards for pleading a claim against a governmental *entity*, as distinct from against an *individual* government official. Everett sues both Baldwin and Tarry in their official capacities, and not in their individual capacities. *See* Second Am. Compl. Section 1983 provides, in relevant part, that "[e]very *person* who … subjects … any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured … ." 42 U.S.C. § 1983 (emphasis added). In *Monell*, the Supreme Court held that local governmental entities are

"persons" under Section 1983 and can be subject to liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 689 (1978). Claims "against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). But Section 1983 does not permit vicarious liability for the actions of municipal employees, so a government entity is only liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury … ." *Monell*, 436 U.S. at 694. A plaintiff may show that an official policy exists in the form of "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citation and quotations omitted).

Here, Everett's suit against Baldwin and Tarry in their official capacities is treated as an action against the government entity itself—the Illinois Department of Corrections, which in turn really is the State of Illinois. *See Walker*, 526 F.3d at 977.[4] So the question is whether Everett has met the pleading standards for a

---

[4]It is true that States are not "person[s]" under § 1983, but when a state official is sued for *injunctive* relief only, then as a formal matter the case is not characterized as a suit against the State for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 & 71 n.10 (1989). Relatedly, because the official-capacity Eighth Amendment claims

government-entity claim. Everett does not allege that there was an express policy of medical-permit non-enforcement, nor does he allege that Baldwin and Tarry had final policymaking authority under which they issued an explicit policy. *See* Second Am. Compl. Rather, Everett alleges the existence of an unwritten custom, practice, and policy in which IDOC/Stateville officials routinely ignore medical low gallery/low bunk permits and refuse to enforce medically prescribed treatment. *Id.* ¶¶ 75-78. In other words, the culture of disregarding medical permits was "so permanent and well settled as to constitute a custom or usage with the force of law." *Gable*, 296 F.3d 531 at 537; Second Am. Compl. ¶¶ 75-78.

Everett's allegations about this non-enforcement policy (or the absence of an enforcement policy) are also specific enough to survive a motion to dismiss. In *Leatherman*, "[t]he Supreme Court [ ]made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). Although it is true that *Iqbal* requires factual allegations, rather than conclusions, 556 U.S. at 679, here Everett has met the pleading standards for government-entity liability. The overall allegation (supported by more detailed factual allegations) is that IDOC or Stateville maintained an "official policy and widespread custom by which both placement staff and security staff pass the buck and refuse responsibility for ensuring that inmates receive low galleries, low bunks

---

are really claims against the State of Illinois, Everett correctly refrains from seeking monetary damages on those claims.

or both consistent with their medical prescriptions and/or permits." Second Am. Compl. ¶ 75. He also alleges that these "inmates at Stateville are continually denied timely assignment to low galleries, low bunks or both, despite having medical permits and/or obvious medical needs requiring the same." *Id.* ¶ 77. In support of those allegations, Everett offers even more detail: he alleges that Defendants failed to honor his low bunk and low gallery permits on six occasions in 2013—April 16, April 23, April 30, May 14, October 2, and November 12—after repeated informal complaints to prison officials and formal grievances to management. *Id.* ¶¶ 13, 15-17, 35, 37-39, 58-59, 62-74. Everett also alleges he had a similar experience with permit non-compliance after sustaining an injury in 2009, *id.* ¶¶ 46-51, and that the John Howard Association, a watchdog organization, has also observed a pattern of permit non-enforcement at Stateville. *Id.* ¶¶ 75-78; John Howard Association Report at 10. Finally, Everett points to various other lawsuits involving similar allegations of failing to honor low gallery and low bunk permits throughout IDOC, facts that also suggest a policy of non-compliance. *Id.* ¶ 3 (citing cases). These more-than-barebones allegations provide Defendants with notice of Everett's municipal claims and the facts supporting the existence of such a policy.

### ii. Eighth Amendment Deliberate Indifference

The crux of Defendants' first argument that Everett has failed to state a deliberate-indifference claim is that Baldwin and Tarry cannot be liable for permit non-compliance when "Plaintiff never alleges that Defendants were aware that the permits were not sufficiently enforced, or that further policy was required." Defs.'

Br. at 4. In essence, Defendants argue that because they were not personally involved in Everett's care, they did not have the subjective mental state of deliberate indifference necessary for an Eighth Amendment medical-needs claim. *Id.* ("Unless the Defendants knew of the alleged problem, Defendants cannot be liable of deliberate indifference for not fixing the problem."). The Court rejects this argument because Defendants conflate the standards of individual and official-capacity suits, as explained below.

An individual-capacity suit targeting an individual for personal misconduct differs from an official-capacity suit targeting a governmental entity for a widespread policy or practice. Everett brings the latter, which does not require personal involvement in the plaintiff's specific situation. "Whereas in an official capacity suit the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity, an individual capacity suit focuses on the constitutional torts of an individual official." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). In an individual-capacity suit, "a plaintiff must show that the named defendant was personally involved in the alleged constitutional violations." *Hooper v. Lain*, 2015 WL 1942791, at *3 (N.D. Ind. Apr. 29, 2015) (citing *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002)). In contrast, in "official capacity claims, the issue is not whether [the plaintiff] has alleged facts giving rise to 'personal involvement,' but rather whether he has stated a claim under [*Monell*]." *Hunt v. Hardy*, 2012 WL 2458943, at *5 (N.D. Ill. June 27, 2012); *Jones v. Dart*,

2013 WL 4854368, at *4 (N.D. Ill. Sept. 11, 2013) ("A *Monell* claim against an individual in their official capacity does not require an allegation that the individual had personal knowledge of the alleged constitutional deprivations ... ."). As explained above, *see supra* Section III.A.1.i, Everett has met the pleading standards for a government-entity claim.

Defendants emphasize that the Eighth Amendment requires a mental state of deliberate indifference. Defs.' Br. at 4.[5] In the Eighth Amendment context, it is true that claims must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 106 (1976). In individual-capacity suits, deliberate indifference requires more than negligence; an official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). So a prison official cannot be individually liable if he "was not actually subjectively aware of that risk," even if "he should have been aware of a risk that harm would befall an inmate ... ." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) (citing *Farmer*, 511 U.S. at 838). On the other hand, "a municipality, rather than an individual, may violate the Eighth Amendment where a risk of serious harm was so patently obvious that the municipality must have been aware

---

[5]The Eighth Amendment is applicable to the states through the Fourteenth Amendment and "imposes a duty upon states to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

of risk of harm and, by failing to act to rectify it, sanctioned the harmful conduct." *Id.* (citations omitted). That is, the subjective knowledge required in individual-capacity claims is not applicable as to the officials who are named in their official capacities. *Id.* To survive a motion to dismiss an official-capacity suit, a plaintiff must simply plead enough to suggest "a long-term pattern of negligence or some type of systemic deficiency in available medical resources … to show that the mistreatment goes beyond the occasional medical negligence by an employee, into the realm where the governmental agency should be expected to know of the problem and remedy it." *Freeman v. Fairman*, 916 F. Supp. 786, 792 (N.D. Ill. 1996).

Here, Everett also sufficiently pleads deliberate indifference by alleging a "systemic deficiency" that IDOC should have noticed. *Id.* at 792. As previously discussed, Everett alleges a pattern of misconduct based on his experiences with permit non-enforcement in 2013 and 2009, a John Howard Association Report that reached similar conclusions, and other lawsuits throughout IDOC involving non-compliance. *See supra* Section III.A.1.i. These allegations (which must be accepted as true at this pleading stage) suggest that the deficiency was pervasive enough that IDOC should have been expected to detect the problem. Because the claim is against the government entity, Everett need not allege Defendants' subjective knowledge of the risk of permit non-compliance and a disregard of that risk.

### iii. Eighth Amendment Harm

Next, Defendants argue that Everett has not suffered any constitutionally recognized harm because "the added difficulty, or even pain, experienced by an

inmate due to the facilities in which he is incarcerated is not enough to state a claim under the Eighth Amendment." Defs.' Br. at 6. Defendants believe that having to travel to and from meals or occasionally missing a shower is not serious enough to implicate the constitution. *Id.* But Defendants ignore Everett's allegations of serious pain, which must be accepted as true at this stage, and are enough to trigger the Eighth Amendment.

It is true that only "deliberate indifference to *serious medical needs* of prisoners" is actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 104 (emphasis added). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *McGee v. Ramos*, 2010 WL 3937617, at *3 (N.D. Ill. Oct. 5, 2010) (citing *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005)). And suffering pain is actionable; courts "have repeatedly recognized that delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). The resulting "needless pain and suffering … is 'repugnant to the conscience of mankind' … ." *Id.* (citing *Estelle*, 429 U.S. at 106); *see also Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (suffering severe pain after a prison nurse refused to give plaintiff the prescribed pain medication was actionable under the Eighth Amendment); *Hunt*, 2012 WL 2458943, at *1 (plaintiff, who injured his back and was not allowed to see a doctor for three days was "virtually unable to move" and successfully pled a serious medical condition);

*Bond v. Aguinaldo*, 265 F. Supp. 2d 926, 929 (N.D. Ill. 2003) ("[Plaintiff's] allegations of back and throat pain are sufficient to support a claim of serious medical need.").

Everett's allegations meet this definition of serious medical need; he alleges that after injuring his knee, his pain was so serious that it warranted medical attention and treatment in the form of crutches, low bunk and low gallery permits, and pain medication. Second Am. Compl. ¶¶ 12, 16, 35, 55. After his injury, he experienced constant, throbbing pain that forced him to crawl on stairways and sleep on the floor. *Id.* ¶¶ 12, 33-34. And according to his complaint, IDOC/Stateville policies reflected deliberate indifference to his medical condition by delaying and withholding his prescribed treatment, causing sustained and severe pain. *Id.* ¶¶ 18, 23, 75-78. Like the cases cited above, these allegations are sufficient to allege a serious medical condition.[6]

Lastly, Defendants miss the mark when they argue that Everett has not stated a claim because the Eighth Amendment does not entitle him to sleep on an elevated bed (as opposed to on the floor). Defs.' Br. at 6-7. That is not the violation that Everett complains of; rather, Everett properly alleges that Defendants ignored

---

[6]Everett argues that it is not necessarily the pain or consequences of his medical condition, but the "refusal to comply with medical permits" that automatically amounts to a constitutional violation. R. 126, Pl.'s Resp. at 4. But a medical permit might call for treatment that is *beyond* what is required by the Eighth Amendment. Consider a prison facility that decides, as a matter of prison policy, to provide medical care above and beyond constitutionally-minimum standards. If a prison healthcare provider were to issue a medical permit for contact lenses rather than eyeglasses, but there is no medical necessity for contacts, the prison has not necessarily violated the Constitution by suppling eyeglasses merely because the prison did not follow the medical permit.

his serious medical condition of severe pain resulting from his knee injury. *See supra*.

## 2. ADA and Rehab Act

### i. Pleading Standards

In Count Two, Everett also alleges that Defendants, by failing to enforce his permits, denied him access to Stateville programs, facilities, and accommodations in violation of the Rehab Act and Title II of the ADA. Second Am. Compl. ¶¶ 105, E-F. Everett further alleges that Defendants discriminated against him on account of his disability when they did not allow him to continue working in the prison barbershop. *Id.* ¶¶ 108-09. In response, Defendants argue that Everett has failed to state a claim for three reasons: (1) Everett conflates Section 1983 and the ADA; (2) Everett is not entitled to monetary damages because he does not allege intentional discrimination; and (3) Everett's dismissal from his job at the barbershop is not an Eighth Amendment violation. Defs.' Br. at 7-9. The Court holds that Everett has stated a claim under the ADA and Rehab Act.

The analysis and relief under the Rehab Act, 29 U.S.C. § 794a *et seq.*, and Title II of the ADA, 42 U.S.C. § 12132 *et seq.*, are similar; the only difference is that "the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (citing cases). To state a Rehab Act claim, a plaintiff must allege that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his

disability." *Id.* (citations omitted). Similarly, Title II of the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). The ADA and Rehab Act standards are "functionally identical," *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), so the Court will consider them together. *See also Garfield v. Cook Cnty.*, 2009 WL 4015553, at *2 (N.D. Ill. Nov. 19, 2009) ("[C]ourts generally analyze claims brought under the two statutes similarly.") Under the two statutes, a plaintiff need only "plead facts which plausibly (even if improbably) support each element of his claim," a standard that is "not [] exacting." *Jaros*, 684 F.3d at 672.

As to the first two requirements—a qualified person with a disability— "[d]isability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Id.* (citing 42 U.S.C. § 12102(2)(A)). In *Jaros*, the plaintiff met this prong because he had severe hip pain and trouble walking. *Id.* at 671. Similarly, here, Everett is also a qualified person with a disability. As a result of his knee injury and resulting pain, he could not stand upright or walk, and had to crawl up and down stairs and sleep on the floor.

Second Am. Compl. ¶¶ 26, 33, 35, 39, 45, 55-57. Nor was he able to access meals and showers, which were both on the first floor. *Id.* ¶ 57. His knee condition clearly constrained, indefinitely, the major life activities of walking, standing, bending, and caring for himself.

Furthermore, Everett has alleged the remaining elements, namely, that Defendants denied him access to a program or activity because of his disability. Meals and showers available to inmates are programs and activities protected by the Rehab Act and ADA. *Jaros*, 684 F.3d at 672. In *Jaros*, the plaintiff successfully stated a claim when he alleged that the "[t]he refusal to accommodate [his] disability"—that is, his back injury and inability to walk—"kept him from accessing meals and showers on the same basis as other inmates." *Id. See also Johnson v. Godinez*, 2015 WL 135103, at *2 (N.D. Ill. Jan. 9, 2015) (plaintiff whose low bunk/low gallery permits were unenforced stated an ADA and Rehab Act claim because he could not climb the stairs and thus could not attend meals); *Garfield*, 2009 WL 4015553, at *3 (plaintiff stated a Rehab Act and ADA claim when prison officials allegedly confiscated his cane and "denied [him] access to the recreation area, which is a program or activity."). Likewise, in this case, Everett alleges that the failure to move him to a low bunk and low gallery prevented him from accessing meals and showers, both of which were on the ground floor, because he could not navigate the stairs. Second Am. Compl. ¶¶ 55-57, 67. Because Everett alleges that Defendants denied him access to prison services, programs, and activities on the basis of his medical condition, he successfully states a claim.

Defendants' arguments to the contrary are unpersuasive. They first argue that Everett "conflates" his Section 1983 claim with his ADA and Rehab Act claims, Defs.' Br. at 7-8, but those claims are not mutually exclusive as long as Everett alleges the necessary elements of each claim. Courts often consider all three claims in a case involving a prisoner's medical conditions. *See, e.g.*, *Jaros*, 684 F.3d at 670-73 (see above); *Garfield*, 2009 WL 4015553, at *1-4 (see above); *Holmes v. Godinez*, 2015 WL 5920750, at *45 (N.D. Ill. Oct. 8, 2015) (explaining that "Plaintiffs' § 1983 constitutional claims are not barred by the remedial statutory schemes of the ADA or Rehabilitation Act.").

Defendants also argue that Everett's specific claim on his lost janitorial job is not cognizable under the Eighth Amendment because "[Everett] leaves entirely to the reader's imagination how this directive violates his rights, as this action can neither be classified as cruel and unusual punishment, nor deliberate indifference to a serious medical need." Defs.' Br. at 9. But Everett brings this claim under the ADA and Rehab Act, and not under the Eighth Amendment. Second Am. Compl. ¶¶ 101-110; Pl.'s Resp. at 7 n.6 ("Plaintiff alleges that the dismissal from his job violated his rights under the ADA and RA, not the Constitution."). As previously explained, Everett is a qualified individual with a disability. *See supra*. And he also alleges he was not allowed to continue his janitorial job at the prison barbershop because of his disability, even though he was able to do the work. *Id.* ¶¶ 79-84, 108. Courts have held that prison jobs are activities, services, or programs encompassed by the ADA and the Rehab Act. *See, e.g.*, *Jaros*, 684 F.3d at 672-73 (the plaintiff

alleged that he was not allowed to participate in the work release program "solely because he uses a cane—thus keeping him out of the program 'by reason of' his disability, as required to state a claim of discrimination under the Rehabilitation Act."); *London v. Schwochert*, 2015 WL 5172894, at *2 (E.D. Wis. Sept. 2, 2015) (the plaintiff's prison employment claim could be brought under the ADA). So Everett's claim—that Defendants prevented him from working at the barbershop because of his physical ailments, even though he was capable of doing the work—is actionable under the ADA and Rehab Act.

### ii. Intentional Discrimination

Finally, Defendants argue that "Plaintiff's claim for monetary damages under the ADA and RA should be dismissed because Plaintiff has failed to allege that Defendants' actions amounted to intentional discrimination of Plaintiff on the basis of his disability." Defs.' Br. at 8. The Court will first evaluate the requirement of intentional discrimination for compensatory damages, even though the parties do not dispute this.

Courts have explained that "[i]t is necessary to show intentional discrimination in order to recover compensatory damages (as opposed, say, to injunctive relief)" under the ADA and Rehab Act. *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009); *see also Kennington v. Carter*, 2004 WL 2137652, at *7 (S.D. Ind. June 28, 2004) ("Proof of intentional discrimination is necessary before a plaintiff may recover compensatory damages under Title II of the ADA," which borrows from the Rehab Act). As *Phipps* explained, Title II of the ADA

incorporates the Rehabilitation Act's enforcement structure. *Phipps,* 681 F. Supp. 2d at 917 (citing 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.")). The Rehabilitation Act, in turn, incorporates Title VI of the Civil Rights Act. *Id.* (citing 29 U.S.C. § 794a(a)(2) ("The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 … shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.")). After the Supreme Court held in *Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582 (1983) that plaintiffs were entitled to compensatory damages under Title VI for intentional discrimination, "courts have almost unanimously taken *Guardians* to mean that compensatory damages are similarly available under Title II of the ADA if—and only if—the plaintiff shows discriminatory intent." *Id.* (citing cases). Although the Seventh Circuit has not elaborated on this issue, it hints agreement with this view. *See Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) ("Compensatory damages are available under the Rehabilitation Act … but may be available only for claims of intentional discrimination."); *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014) ("We note that all circuits to consider the question have held that compensatory damages are only available for intentional discrimination" under the ADA and Rehab Act); *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir.

2014) ("Even if [a plaintiff] could show a violation of the ADA and/or Rehabilitation Act, he could not recover compensatory damages without showing intentional discrimination.").

In applying this requirement, the Court concludes that Everett's Second Amended Complaint adequately pleads a plausible inference of intentional discrimination, so dismissing the compensatory damages request is inappropriate at this stage. The Seventh Circuit has not detailed what "intentional discrimination" means in the context of the ADA and the Rehab Act, but "the majority approach … is to apply a deliberate indifference standard." *McKinnie v. Dart*, 2015 WL 5675425, at *7 (N.D. Ill. Sept. 24, 2015). This standard "does not require personal animosity or ill will but rather may be inferred when there is knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* (citations omitted). Here, intentional discrimination can be inferred by Everett's repeated (according to him) requests for reassignment in compliance with his permits and his multiple formal grievances. These complaints should have alerted Defendants of the need to accommodate his medical condition, and the failure to do so suggests deliberate indifference to Everett's medical needs. *See, e.g.*, *Hildreth v. Cook Cnty.*, 2010 WL 1656810, at *3 (N.D. Ill. Apr. 23, 2010) (plaintiff, who had Parkinson's disease and could not write, alleged deliberate indifference when defendants refused to enforce a court order for access to the library and typewriter). Because Everett has pled enough for "an inference of intentional discrimination," dismissing his claim for monetary damages is not appropriate at

this point. *Id.* "Whether, after discovery, [he] can present enough evidence of intentional discrimination sufficient to support an award of damages is not the issue on a motion to dismiss." *Id.*

### 3. Policy of Denying Medical Treatment

Everett's final claim—Count Three—is that Defendants violated the Eighth Amendment by "perpetuat[ing] an official policy and widespread custom and practice whereby IDOC employees deny inmates medical diagnosis or treatment—regardless of the severity of the inmates' medical needs—if the inmates are scheduled to be seen in the healthcare unit at a future date." Second Am. Compl. ¶ 112. As an example, Everett explains that after (re)injuring his knee on April 28, 2013, the healthcare unit refused to see him because he already had in place a health appointment set for two days later, on April 30. *Id.* ¶¶ 25-29. Despite Everett's repeated requests, the medical team refused to see him even though he was in considerable pain and needed immediate medical attention. *Id.* Defendants, however, argue that Everett's lone experience is insufficient to establish a widespread policy. Defs.' Br. at 9-10.

Everett has stated a claim because, as previously explained, there is no heightened pleading standard for a § 1983 official-capacity claim. *See supra* Section III.A.1.i. Everett alleges that he severely injured his knee, dragged himself to the healthcare unit, and waited in pain for hours for medical treatment, only to be repeatedly refused treatment because he was scheduled to be seen in two days. *Id.* ¶¶ 18-35. He alleges that two medical technicians used the same basis—that the

scheduled appointment prevented medical assistance—to deny immediate treatment. *Id.* ¶¶ 25, 28. The plausible inference is that the medical technicians were not coincidentally exhibiting the same personal preference, but instead were acting under a widespread custom and practice. Everett's allegations are "buttressed by facts alleging wrongdoing by the [government entity]" and thus are "sufficient to put the [government entity] on notice of his claim against it." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

Defendants rely on *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) for the proposition that one instance of a constitutional violation is insufficient to "truly evince the existence of a policy." Defs.' Br. at 9. But *Phelan* was a summary judgment case where the plaintiff provided a few of her own experiences of sexual harassment but failed to "introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." 463 F.3d at 790. Everett will surely be held to this standard at summary judgment, but at the motion to dismiss stage, the allegations that the two medical technicians recited the same practice to deny the treatment is enough to survive. *See supra* Section III.A.1.i.

### B. Motion to Strike Class Allegations

In addition to the motion to dismiss, Defendants also move to strike Everett's class claims of low bunk/low gallery permit non-enforcement. Defs.' Br. at 10. As previously explained, motions to strike class allegations are evaluated under the same standards as Rule 23, and a class must satisfy the numerosity, commonality,

typicality, and adequacy requirements of Rule 23(a) as well as one subsection of Rule 23(b). *See supra* Section II.B. Here, Defendants do not challenge any of the Rule 23(a) prerequisites.[7] Instead, they argue that Everett does not meet the requirements of Rule 23(b)(2), which forms the basis of Everett's class claims. Second Amended Comp. ¶ 85; Defs.' Br. at 14-15. That rule provides that a class action is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Everett's proposed class includes "all inmates of IDOC who from June 26, 2011 to present received medical permits requiring placement in a low gallery, low bunk or both." Second Am. Compl. ¶ 86. Although they present the argument in a different way, Defendants' argument is essentially that Everett's proposed class is too broad because it is not limited to inmates whose permits were unenforced (as opposed to all inmates who received permits) and inmates at Stateville (as opposed to all inmates at IODC). Defs.' Br. at 14. So according to Defendants, injunctive relief would be improper for "class as a whole" under Rule 23(b)(2).

The Court denies Defendants' motion because "[a]lthough courts may strike class allegations at the pleading stage when they are 'facially and inherently deficient,' courts will not do so when the dispute is factual and discovery is needed." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (citation

---

[7]Defendants originally argued that Everett is an inadequate class representative, Defs.' Br. at 11-14, but they later withdrew this argument, R. 131.

omitted); *see also, e.g.*, *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) ("While there may indeed be issues with the proposed class, the Court believes it is premature to engage in this analysis at the motion to dismiss stage. Rather, these issues are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification."); *Boatwright v. Walgreen Co.*, 2011 WL 843898, at *2 (N.D. Ill. Mar.4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action … a decision denying class status by striking class allegations at the pleading stage is inappropriate."). In this case, Everett's class allegations are not facially and inherently deficient because he has successfully stated a claim that he and others suffered from a widespread policy that denied inmates low bunks and low galleries. *See supra* Section III.A.1.

In addition, although the Court acknowledges Defendants' legitimate concerns about overbreadth, the definition can be fleshed out during discovery. As to whether the class definition should encompass only Stateville or all IDOC inmates, Everett has presented alleged instances of low bunk and low gallery permit non-compliance outside of Stateville. *See* IDOC/Stateville Cases (citing *Spears v. Shearing*, 2014 WL 4054762 (S.D. Ill. Aug. 15, 2014) (alleging denial of a low gallery and low bunk at Menard Correctional Center in Menard, Illinois); *Simmons v. Illinois Dep't of Corr.*, 2014 WL 2159000 (S.D. Ill. May 23, 2014) (same); *Norris v. Godinez*, 2010 WL 2681287 (N.D. Ill. July 6, 2010) (alleging denial of a low

bunk at Lawrence Correctional Center in Sumner, Illinois)). For now, that is enough to maintain the proposed class definition encompassing all IDOC inmates. But if discovery reveals no evidence that the alleged problem of non-enforcement extended beyond Stateville, then the class definition can be modified to Stateville inmates only. In addition, it makes sense, as Defendants argue, that eventually the class should be limited to inmates whose low bunk or low gallery permits were *not* enforced. Defs.' Br. at 14-15. But rather than striking these class allegations now, it is more appropriate for Everett to modify this definition at the class certification stage.

Defendants' final argument—that Everett's class allegations should be stricken because courts should not interfere in prisons' day-to-day housing decisions—is puzzling. Defs.' Br. at 15. Of course there is general deference to prison officials in making prison policy, but the defense's broadly worded argument is not connected in any concrete way to the actual issues presented in the motion. And although deference is surely important, at the same time courts are responsible for enforcing the Constitution and providing appropriate relief when there is a violation.

## IV. Conclusion

For the reasons discussed, Defendants' Motion to Strike and Dismiss Everett's Second Amended Complaint, R. 120, is denied.

ENTERED:

<u>    s/Edmond E. Chang    </u>
Honorable Edmond E. Chang
United States District Judge

DATE: January 15, 2016